**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**KIMBERLY ABLES,**

**Plaintiff,**

**v.**

**KILOLO KIJAKAZI,**[1]
**Acting Commissioner of Social Security,**

**Defendant.**

**CIVIL ACTION NO.: 5:22-CV-102
(JUDGE BAILEY)**

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This case arises from the denial of Plaintiff Kimberly Ables's ("Plaintiff") Title II application for disability insurance benefits ("DIB") and for Social Security Income ("SSI") benefits. After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence, the undersigned **REPORTS** and **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 17] by which she requests that the ALJ's decision be set aside, be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 18] be **GRANTED**.

---

[1] Kilolo Kijakazi may be automatically substituted in place of former commissioner Andrew M. Saul pursuant to Fed. R. Civ. P. 25(d).

## II.   <u>PROCEDURAL HISTORY</u>

On January 21, 2020, Plaintiff filed her application under the Social Security Act for DIB and SSI, alleging disability that began on December 31, 2019. (R. 57, 212, 219). This claim was initially denied on May 1, 2020 (R. 164) and denied again upon reconsideration on August 5, 2020. (R. 171). On September 14, 2020, Plaintiff filed a written request for a hearing (R. 177), which was held before the ALJ on March 22, 2021, in Morgantown, West Virginia. (R. 57, 77). Plaintiff, proceeding *pro se*, appeared via teleconference and testified. Eric Dennison, an impartial vocational expert ("VE"), also testified at the hearing. Id. On March 31, 2021, the ALJ issued an unfavorable decision to Plaintiff, finding that she was not disabled within the meaning of the Act. (R. 70).

Plaintiff filed a request for review of hearing decision dated May 25, 2021. (R. 209). It appears that counsel then appeared for Plaintiff on or about June 9, 2021. (R. 17). Subsequently, on October 29, 2021, the Appeals Council issued a Notice denying Plaintiff's request for review. (R. 10). Then, by notice dated January 21, 2022, the Appeals Council declined to reopen its earlier decision. (R. 7). Plaintiff filed her Complaint with this Court on April 19, 2022. [ECF No. 1]. The Commissioner filed the Answer and Administrative Record on June 27, 2022. [ECF Nos. 12, 13]. Plaintiff filed a Motion for Summary Judgment and brief in support, thereof, on August 26, 2022. [ECF Nos. 17, 17-1]. Defendant filed a Motion for Summary Judgment and memorandum in support, thereof, on September 26, 2022. [ECF Nos. 18, 19]. Plaintiff filed a reply in support of her summary judgment motion on October 17, 2022. [ECF No. 22]. After the matter was fully briefed, the undersigned conducted a hearing on November 7, 2022 to receive argument from counsel.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## III.    BACKGROUND

### A. Personal History

Plaintiff was born on December 1, 1971 (R. 82), making her 48 years old as of her alleged onset date (December 31, 2019), and that same age on the date (January 21, 2020) she made her application for DIB and SSI. She is approximately 5'1" tall and weighed 330 pounds at the time of the hearing before the ALJ. (R. 82). It appears that she completed high school, and additionally received vocational training and achieved a license to be a certified nursing assistant ("CNA"). (R. 83). Plaintiff obtained her CNA license in 1995, and had kept her CNA license current. (R. 84). Plaintiff is unmarried and shares a home her sister and her brother-in-law. (R. 83). Plaintiff's last day of work was December 31, 2019. From 2014 to her last day of work in 2019, Plaintiff worked for a physician as a clinical assistant, which involved checking in patients and registering them. (R. 85-86). She was standing rather than sitting in that job, and left the job because of the amount of standing required. (R. 86). At the time of the hearing before the ALJ, Plaintiff had taken a lighter-duty position as a receptionist with this same employer, owing to her physical limitations. (R. 70-71). Plaintiff started work at the primary care clinic in 2016. (R. 70).

Prior to that, Plaintiff worked at St. Joseph's Hospital as a registration clerk. (R. 86). At that prior job, Plaintiff did not have to lift; she performed duties by a combination of sitting half of the time and standing/walking half of the time. (R. 87).

Plaintiff left the job at St. Joseph's Hospital to care for her dying father. (R. 87). She was able to care for her father through a full-time employment arrangement with a senior citizens center. (R. 88). She held this job from February 2014 until June 2014. (R. 88). Plaintiff lifted her father when he would fall, which happened approximately two times per week. (R. 88). Her father weighed approximately 160 pounds. (R. 88). Otherwise, Plaintiff aided her father with personal care and meal preparation. (R. 88). She also assisted her father with care such as distributing medications and taking blood pressure. (R. 89).

A job which Plaintiff held prior to employment at St. Joseph's Hospital was as a CNA at another hospital, Stonewall Jackson Memorial Hospital. She held that job from 1995 until 2011. (R. 88). At that job, she also was a monitor technician in the intensive care unit ("ICU") for a period of three years, which involved assisting ICU nurses and observing monitors. (R. 89). As a CNA at Stonewall Jackson Memorial Hospital, Plaintiff lifted and turned patients every day; Plaintiff estimated the weights lifted to be 50 pounds or more. (R. 89). At this CNA job, Plaintiff often was on her feet. (R. 89).

Plaintiff alleges that she is limited in her ability to work due to "morbid obesity, degenerative disc disease of the lumbar spine with stenosis and grade 1 spondylosis at L4-L5, degenerative joint disease of the right foot subtalar and broken hardware at the 5th metatarsal, moderate tricompartmental degenerative joint disease of the right knee, major depressive disorder, generalized anxiety disorder, and dependent and avoidant personality features." [ECF No. 17-1, at 6].

### B.  Medical History

In accordance with the Court's Order Directing Filing of Briefs [ECF No. 14], the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in

narrative form of Plaintiff's relevant medical history. Plaintiff does not include a section in her summary judgment brief designated as stipulated facts, per se, but does include a medical summary setting forth such information, which the undersigned construes as facts to which Plaintiff stipulates. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl's Brief Supp. Mot. Summ. J., ECF No. 17-1, at 1-3; Def.'s Brief Supp. Mot. Summ. J., ECF No. 19, at 4-5.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work…'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). The Commissioner uses the following five-step sequential evaluation process to determine if a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4); 416.920. If the claimant is determined to be disabled or not disabled at one of the five steps, the process does not proceed to the next step. Id.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that, since December 31, 2019, the alleged onset date, Plaintiff had not engaged in any substantial gainful activity. (R. 59). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine with stenosis; spondylosis and Grade 1 spondylolisthesis at L4-L5; degenerative joint disease of the right foot subtalar joint and broken hardware at the fifth metatarsal; moderate tricompartmental degenerative joint disease of the right knee; major depressive disorder; generalized anxiety disorder; and dependent and avoidant personality features. (R. 59-60). At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. (R. 60). At step four, the ALJ determined that Plaintiff's RFC as follows:

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: no climbing ladders, ropes, or scaffolds and limited to occasional other postural movements (i.e. climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling); must avoid concentrate exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust and gases and must avoid all exposure to any hazards such as dangerous moving machinery and unprotected heights; capable of work in a low stress job defined as having no fast-paced production requirements such as fact-paced assembly line work or high volume piecemeal quotas; must be afforded the opportunity for brief 1-2 minute changes of position at intervals not to exceed 30 minutes without being off task; and job must accommodate the use of a care or other assistive devices for ambulation.

(R. 63-64). Finally, the ALJ determined that Plaintiff has past relevant work as an admitting clerk and is capable of performing that work. (R. 68). Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Act. (R. 70).

## VI.   <u>DISCUSSION</u>

### A.  Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. <u>See generally</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Id.</u> (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (quoting <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996)).

## B.  Contention of the Parties

Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. [ECF No. 17-1]. Plaintiff's principal argument is that the ALJ did not properly develop the record at the hearing before the ALJ in light of Plaintiff's *pro se* status at that proceeding. Plaintiff argues that the ALJ should have taken greater care in developing the record because Plaintiff did not have the benefit of counsel at that hearing. More specifically, Plaintiff argues that the ALJ should have asked more questions about her ability to ambulate over some distance, and otherwise travel and move, to perform the daily tasks of living. Plaintiff also argues that the ALJ, in finding that she is capable of sedentary work, did not inquire sufficiently about her ability to stand, or to sit for eight hours daily. Finally, Plaintiff argues that, in finding that Plaintiff needs a cane to <u>ambulate</u>, the ALJ nonetheless failed to make a corresponding inquiry about whether Plaintiff needs a cane also to <u>balance</u>.

Defendant argues, on the other hand, that the ALJ's decision is supported by substantial evidence. Defendant agrees that an ALJ has a certain duty to develop the record, but disputes that the ALJ here failed to do so in context of a *pro se* proceeding. As for Plaintiff's ability to ambulate, Defendant stresses that absent evidence of some issue concerning it, the regulations do not require an ALJ to inquire about it. Relatedly, to require an ALJ to prove than a claimant <u>can</u> ambulate – rather than require a claimant to prove that they <u>cannot</u> ambulate – would be a de facto shifting of the burden of proof to the agency. Defendant points out how the ALJ found inconsistencies between Plaintiff's statements regarding her ailments, and the evidence of record. Yet, per Defendant, the ALJ nonetheless accounted for Plaintiff's subjective statements by incorporating a sit/stand option for Plaintiff and accounting for Plaintiff's use of a cane. And Defendant disagrees that the ALJ had to inquire about whether Plaintiff needs a cane to <u>balance</u>.

**C.  Analysis of the Administrative Law Judge's Decision**

As is frequently the case in the review of these matters, the main substantive issue is whether the ALJ's review of the medical records is sufficient enough to receive deference under the "substantial evidence," standard, or whether the ALJ's review was so deficient as to merit remand. In particular, the issues are narrowed to two parts of (1) whether the ALJ developed the record sufficiently in light of Plaintiff's *pro se* status, and (2) in so doing, and perhaps more to the point, whether the ALJ developed the record sufficiently to gauge whether Plaintiff meets one or more impairments in the Listings. Here, the undersigned **FINDS** that substantial evidence supports the ALJ's thorough review, such that the decision below is entitled to deference.

*1. Handling of a pro se claimant.*

Certainly, caselaw instructs that ALJs have a duty to develop the record appropriately, and must take special care when doing so with a *pro se* claimant.

> The ALJ is required . . . to inquire fully into each issue. He is held to a high standard in discharging this fact-finding requirement. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962), cert. denied sub nom. Heath v. Celebrezze, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963). The performance of this duty is particularly important when a claimant appears without the assistance of counsel. Under such circumstances, the ALJ should "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," Gold v. Secretary of Health, Education and Welfare, 463 F.2d 38, 43 (2nd Cir. 1972), being "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Rosa v. Weinberger, 381 F.Supp. 377, 381 (E.D.N.Y.1974).

Marsh v. Harris, 632 F.2d 296, 299 (4th Cir. 1980). However, caselaw also instructs that a claimant's *pro se* status is not, standing alone, a "reason to upset the Secretary's decision, for the Secretary has no duty to insist that claimant have counsel." Id. at 300. Relatedly, ALJs are not obligated to act as legal counsel for claimants. Bell v. Chater, 57 F.3d 1065, at *4 (4th Cir. 1995) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).

In the instant matter, and contrary to Plaintiff's argument, the ALJ handled the hearing quite carefully in light of Plaintiff's *pro se* status. At the very outset of the hearing, the ALJ noted that Plaintiff did not have a representative. (R. 78). The ALJ explained that (a) Plaintiff has a right to have a representative present, (b) Plaintiff would not have to pay for a representative's services out-of-pocket, and (c) such a representative's role is to develop the claim, elicit helpful testimony, and cross-examine witnesses. (R. 78-79). Plaintiff stated that she understood her right to have a representative and the aid which a representative is supposed to provide, but that she wished to proceed without a representative. (R. 79).

The ALJ's explanation – and Plaintiff's acknowledgement – of this does not, standing alone, obviate the ALJ's obligation to handle the matter with sensitivity to Plaintiff's *pro se* status. Rather, this is a harbinger of the care with which the ALJ developed the matter with a *pro se* claimant. After all, the ALJ then explained the process to Plaintiff (R. 79); explained the exhibits to be received and admitted, and asked Plaintiff if she objected to them (she did not) (R. 80); gave Plaintiff the opportunity to make sure the ALJ had all of the records and exhibits which Plaintiff thought were important (and Plaintiff made sure that the ALJ had records of an MRI of Plaintiff's lumbar spine) (R. 80); and then elicited detailed testimony from Plaintiff about her work history, certifications, health issues, living situation, and physical limitations and abilities. (R. 82-97).

Furthermore, when addressing the VE, the ALJ explained the VE's role and inquired whether Plaintiff objected to the VE serving in that role. (R. 98). Plaintiff had no objection. Further, after her conclusion of the examination of the VE, the ALJ invited Plaintiff to ask the VE any questions which Plaintiff may have. (R. 104). Plaintiff had no questions.

*2. The ALJ's substantive review in relation to the Listings.*

Nonetheless, Plaintiff takes issue with the ALJ's above-noted inquiry of her physical limitations. Plaintiff argues that the inquiry was insufficient. Plaintiff would have the ALJ develop the record to show that Plaintiff is incapable of ambulation, and thus show that Plaintiff meets Listings 1.02 (Major dysfunction of a joint(s)) and 1.04 (Disorders of the spine). Plaintiff would have had the ALJ ask, for example, about whether she can "sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," because the record otherwise showed an inability to walk more than a few feet without stopping. (Pl.'s Br. at 8-9). However, Plaintiff is unpersuasive about what the regulations require here.

The regulations do not require an ALJ to search out evidence in this regard. As Defendant rightly notes, requiring as such would, impermissibly shift the burden from the claimant to the Commissioner. See 20 C.F.R. §§ 404.1512(a), 416.912(a) ("you have to prove to us that you are . . . . disabled."). Plaintiff would have Defendant demonstrate the absence of a disability, rather than Plaintiff be affirmatively required to demonstrate disability. Yet, in the undersigned's review of the regulations, there is nothing directing an ALJ to develop the record as Plaintiff urges. Under § 1.00B2b(2), there is merely provided an explanation for what is meant under the regulations by "inability to ambulate effectively" in order for a claimant to establish disability, with examples and context. Relatedly, the above-noted Listings at 1.02A and 1.04C set forth the requirements for demonstrating disability. But there is no directive to ALJs to ferret out evidence, and certainly no reasonable reading of the regulations would burden an ALJ with proving the absence of a disability.

As for what the regulations provide particularly, § 1.00B2b(2) defines the "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e. an impairment(s) that

11

interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." The section further provides that "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of <u>both upper extremities</u>" (emphasis added). In the instant matter, Plaintiff has not shown that the record demonstrates <u>both</u> upper extremities to be limited in function.

As for Listing 1.02 (major dysfunction of a joint), it requires that, to show such dysfunction, there is "gross anatomical deformity (e.g. subluxation, contracture, bony of fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of a joint space narrowing, bony destruction, or ankylosis of the affected joint(s) [] [w]ith [i]nvolvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting inability to ambulate effectively, as defined in 1.00B2b." The ALJ took care to note that, indeed, Plaintiff's ambulation is limited. However, the ALJ further relied on § 1.00B2b(2), which includes, as one example of ineffective ambulation, the need to use "<u>two</u> crutches or <u>two</u> canes" (emphases added). The ALJ noted, though, that Plaintiff uses only <u>one</u> cane. (R. 60). As an aside, and to a point of disagreement between the parties summarized above, the undersigned finds nothing in the regulations which would have required the ALJ here to make a finding about Plaintiff's use of a cane for <u>balance</u> alone.

As for Listing 1.04 (disorders of the spine), it requires that, to show such disorder, there is "compromise of a nerve root . . . or the spinal cord," combined with one of the following: (A) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness)

accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), (B) [s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours," or (C) "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." The ALJ explained that nothing in the record showed that Plaintiff's spinal condition gave rise to muscle atrophy and weakness, or that she exhibited sensory abnormalities. (R. 61). The ALJ was careful to acknowledge that Plaintiff exhibited upper right extremity weakness at her consultative examination, but that nothing in the record shows that this is tied to spinal problems. (R. 61).

Especially helpful in the undersigned's review of the ALJ's decision is that the ALJ, on the one hand, acknowledged Plaintiff's symptoms and limitations, and on the other, painstakingly explained how Plaintiff's statements about her ailments do not square with the evidence of record. (R. 64-65). For example, the ALJ forthrightly stated that Plaintiff's musculoskeletal abnormalities could well be expected to negatively impact her mobility. Yet, the ALJ also noted that Plaintiff experienced "significant relief" from a selective root block administered in January 2020, while maintaining her motor function, coordination, and sensory function. (R. 65). The ALJ further noted that a treating physician ordered the cane for Plaintiff's use (which Plaintiff indicated she uses in the mornings only) and that the cane was accounted for in arriving at the RFC determination. (R. 65). The ALJ also was candid about Plaintiff's obesity and its limiting impacts, yet also accounted for obesity in calculating RFC and determining that Plaintiff can maintain sedentary work. (R. 65-

13

67). The ALJ also summarized how the record shows Plaintiff to have full muscle strength in her lower extremities, and that while she had some balancing difficulties, those difficulties were only minimally impactful and in no case precluded the RFC of sedentary. (R. 65-67).

Notably, the ALJ found the State Agency Medical Consultants to be only <u>partially</u> persuasive, in that their findings did not limit Plaintiff <u>enough</u>. The ALJ took the review a step further, and included a sit/stand option and accounted for Plaintiff's use of a cane, in arriving at the RFC at the sedentary level. (R. 67). In other words, the ALJ limited Plaintiff even more that the State Agency Medical Consultants did, which favors Plaintiff in the analysis. In so doing, the ALJ incorporated Plaintiff's subjective statements about her limitations.

As for Plaintiff's mental and emotional impairments, the ALJ certainly acknowledged and accounted for them. Yet, in review of the record before the ALJ and the parties' briefs on appeal, it appears that any such issues are secondary to Plaintiff's complaints concerning ambulation, mobility, and back pain. The ALJ noted that Plaintiff "has not had significant treatment for depression, anxiety, or personality disorder." (R. 67). Relatedly, the ALJ pointed out, Plaintiff showed "no abnormalities in attention, cognition, memory, judgment, thought content, or behaviors" when her mental status was evaluated during back pain treatment. (R. 67). The ALJ also noted that Plaintiff has some issue with concentration and pace, but not remarkably so. (R. 67). Thus, with such minimal mental and emotional issues, the ALJ concluded that work involving no fast-paced production, as noted above in the RFC summary, would be suitable. (R. 67). There being virtually no evidence or argument contrary to the ALJ's conclusions about mental and emotional impairments, the ALJ's conclusions are supported by substantial evidence.

In sum, in the undersigned's review, the ALJ candidly acknowledged Plaintiff's limitations (both as stated subjectively by Plaintiff and reflected objectively in the record), detailed

14

discrepancies between the objective record and Plaintiff's subjective statements, and carefully tailored an RFC that is as favorable to Plaintiff as could be within the bounds of the regulations and the record. Accordingly, the undersigned **FINDS** that the ALJ's substantive findings should stand.

## VII.    <u>RECOMMENDATION</u>

For the reasons herein stated, the undersigned **FINDS** that the Commissioner's decision denying Plaintiff's claim for DIB and SSI does not contain legal error and is supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 17] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 18] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen (14) days (filing of objections) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this January 27, 2023.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE